UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

MARSHALL BURGESS, JR.,                )      3:12-cv-00085-LRH-WGC
                                      )
           Plaintiff,                 )      **REPORT AND RECOMMENDATION**
                                      )      **OF U.S. MAGISTRATE JUDGE**
     vs.                              )
                                      )
BRIAN E. SANDOVAL, et. al.            )
                                      )
           Defendants.                )
_____ )

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's request for a temporary restraining order and preliminary or permanent injunction. (Doc. # 59.)[1] Defendants have opposed. (Doc. # 61.) After a thorough review, the court recommends that Plaintiff's request be denied.

### I. BACKGROUND

At all relevant times, Plaintiff Marshall Burgess was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Third Am. Compl. (Doc. #65 ) at 1.) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Defendants are Raul Betancourt, Cynthia Greene, Melissa Haynes, James Kelly, Sean Moore, Richard Payne, Michael Peabody, Bobby Preston, Tim Robinson, and Darrel Taylor. (*Id*. at 2-4.)

**A. Initial complaint and filings**

Plaintiff's initial complaint was in excess of 300 pages including exhibits and named

---

[1] Refers to the court's docket number. Unless otherwise noted, all page number references are to the page numbers in the docketed version, and not the filing party's original page number designations.

over 134 defendants. (*See* First Screening Order, Doc. # 5 at 3-4.) The complaint was dismissed without prejudice, noting that most of the claims were "fantastical" and evidenced "a high level of paranoia or narcissistic thought" or were prohibited by the two-year statute of limitations. (*Id.* at 4, n. 1.) Plaintiff was given leave to amend to include allegations or claims arising within two years of the date that the action was commenced, and was directed to state his claims in a clear and concise manner, without repetition or reliance on information and belief. (*Id.* at 5.) He was further instructed to present similar claims together, and to refrain from including fantastical claims or broad generalizations. (*Id.*) Finally, he was alerted that he should only include proper defendants. (*Id.* at 6.)

Plaintiff included motions for temporary restraining order and preliminary injunction with his initial complaint (*see* Docs. # 7, # 8), which were denied because Plaintiff had not presented specifics with respect to his claims and did not make a showing of a likelihood of success on the merits or imminent and irreparable harm. (Doc. # 5 at 6.)

**B. Amended complaint**

Plaintiff then filed an amended complaint pursuant to the court's initial screening order and further moved to include an additional claim and correct the spelling of a defendant's name. (*See* Second Screening Order, Docs. # 20, # 14, # 15, and # 19.)

In the second screening order, the court adjudicated Plaintiff as subject to the "Three Strikes Rule" of 28 U.S.C. § 1915(g). (Doc. # 20 at 1.) Thus, Plaintiff is precluded from commencing any new cases in forma pauperis except upon a showing of imminent danger or serious physical injury. 28 U.S.C. § 1915(g).

The amended complaint raised seven claims against fifty-five defendants. (Doc. # 20 at 3.) The court determined that the only colorable claim was Plaintiff's allegation that his Eighth and Fourteenth Amendment rights were violated through the failure of certain defendants to protect him and through the use of excessive force by others. (*Id.* at 4.)

**C. Second amended complaint**

Plaintiff subsequently sought leave to amend his complaint again (Doc. # 21) and such

2

1  request was denied (Doc. # 23). The Nevada Attorney General's Office accepted service on
2  behalf of defendants Betancourt, Kelly, Moore, Payne, Peabody, Robinson, and Taylor. (Doc.
3  # 37.)[2] Service was not accepted on behalf of defendant Perston because no NDOC employee
4  by that name could be identified. (*Id.*)

   Plaintiff filed yet another motion for leave to amend his complaint, seeking to "clean up"
   the pleading by removing dismissed defendants, correcting the spelling of defendant Perston's
   name to Preston, and moving forward with only the failure to protect and excessive force
   claims. (Doc. # 44.) This motion was granted. (Doc. # 47.) The second amended complaint was
   filed. (Doc. # 48.) The Attorney General's Office apparently accepted service on behalf of the
   defendants, including defendant Preston, by filing an answer. (Doc. # 52.)

**D. Third amended complaint (the operative complaint)**

   Plaintiff subsequently filed another motion for leave to amend, asserting that he forgot
   to add Count II and two medical nurses to his operative pleading, along with a new paragraph
   24. (Doc. # 58.) Defendants did not oppose, and this motion was granted. (*See* Minutes, Doc.
   # 64 at 2-3.) The Third Amended Complaint was filed. (Doc. # 65.)

   Count I is asserted against defendants Kelly, Peabody, Moore, Payne, Robinson, Taylor,
   and Preston, and alleges violations of his Eighth and Fourteenth Amendment rights. (Doc. #
   65 at 6-9.) First, Plaintiff asserts a failure to protect claim based on the allegation that he was
   attacked by other inmates and defendant Betancourt failed to intervene. (*Id.* at 6.) Next, he
   asserts that defendants Peabody, Moore, Payne, Robinson, Taylor and Preston were involved
   in an incident of excessive force where he alleges that he was dragged down a hallway, slammed
   against a wall and then the floor, and tasered unnecessarily. (*Id.* at 6-8.) He claims that he
   reported swelling and burning in his hand, but the nurses denied him treatment, when an x-ray
   taken a few days later revealed his hand was broken. (*Id.* at 8.) Finally, he alleges a Fourteenth
   Amendment due process violation because he asserts that defendant Kelly wrote up a false

---

[2] Plaintiff incorrectly spelled the names of three defendants, which are correctly spelled as follows: Betancourt, Moore, and Taylor.

3

1  incident report and notice of charges to cover up these Eighth Amendment violations. (*Id*. at
2  9.)
3        Count II is directed to defendants Greene and Haynes. (Doc. # 65 at 10.) Plaintiff alleges
4  that nurses Greene and Haynes were the nurses who denied Plaintiff treatment when he
5  complained that his hand was injured in connection with the incident described in Count I.
6  (*Id*.) He asserts that this constitutes deliberate indifference to a serious medical need in
7  violation of the Eighth Amendment.

**E. Instant motion for injunctive relief**

9        Plaintiff then filed the instant motion seeking injunctive relief. (Doc. # 59.) In his
10 motion, Plaintiff asks that he be immediately transferred to NNCC's Mental Health Unit for
11 health and safety reasons through the conclusion of this lawsuit. (*Id*. at 1, 3.) He claims that he
12 has suffered from excessive harassment, verbal taunting, humiliation and embarrassment and
13 is under imminent danger of ongoing attacks by inmates and staff. (*Id*. at 1.) He also references
14 censorship and interference with his legal and personal mail. (*Id*.) He goes on to claim that he
15 has been sleep deprived as a result of noise and verbal threats, and the publishing of books
16 about him. (*Id*. at 2.) Next, he claims that he was poisoned through food by inmates aided by
17 staff. (*Id*.) He also asserts that he has not received adequate dental care. (*Id*.)
18       Defendants have opposed Plaintiff's motion, arguing that Plaintiff's request for
19 injunctive relief has nothing to do with the claims asserted in his complaint. (Doc. # 61.)

## II. LEGAL STANDARD

21       The purpose of a preliminary injunction or temporary restraining order is to preserve
22 the status quo if the balance of equities so heavily favors the moving party that justice requires
23 the court to intervene to secure the positions until the merits of the action are ultimately
24 determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary
25 injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf*
26 *v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court
27 "must balance the competing claims of injury and must consider the effect on each party of the
28

1 granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council,*
2 *Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion
3 requires that the court determine whether Plaintiff has established the following: (1) he is likely
4 to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of
5 preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the
6 public interest. *Id.* at 20 (citations omitted).

7        Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for
8 issuing a preliminary injunction that allowed the movant to offset the weakness of a showing
9 on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d
10 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued
11 validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*,
12 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on
13 a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the
14 likelihood of success is very high…This Court has never rejected that formulation, and I do not
15 believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the
16 sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood,
17 of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v.*
18 *Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-
19 *Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives…when
20 applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words,
21 'serious questions going to the merits' and a hardship balance that tips sharply toward the
22 plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter*
23 test are also met." *Id.*

24        An even more stringent standard is applied where mandatory, as opposed to prohibitory
25 preliminary relief is sought. The Ninth Circuit has noted that although the same general
26 principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that
27 goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious
28

5

about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special

requirements.").

## III. DISCUSSION

**A. Preliminary Considerations**

Many of the claims asserted by Plaintiff as a basis for his request for injunctive relief are wholly unrelated to the allegations of his third amended complaint, *e.g.,* his claims that he was poisoned, that he has received inadequate dental care, and that he has suffered sleep deprivation.

Although the Ninth Circuit has not addressed the issue directly, other circuits have repeatedly held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

This action involves Plaintiff's allegations that Defendants violated his Eighth Amendment rights when they failed to protect him, used excessive force against him, and failed to provide him with medical treatment. In addition, he alleges a violation of the Fourteenth Amendment as a result of false disciplinary charges. To the extent Plaintiff's request for injunctive relief is unrelated to these allegations, Plaintiff is not entitled to seek such relief in this action. Plaintiff is not permitted to file a complaint in federal court and then use that action as a forum to air his unrelated grievances. Such complaints are properly lodged using the prison grievance system and, if they remain unresolved, by filing a new action.

However, because Plaintiff's request for injunctive relief can be read as possibly including a transfer for mental health treatment on the basis that he is receiving some sort of threats that stemmed from the Defendants' conduct in the instant action, the court will now address the elements of injunctive relief in that regard.

**B. Likelihood of success on the merits**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to

7

1 succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

Plaintiff argues that he is likely to succeed on the merits because Defendants were deliberately indifferent to a serious medical need when they intentionally interfered with mental health treatment and treated Plaintiff inhumanely. (Doc. # 59 at 9.)

While Plaintiff is correct that broadly speaking, deliberate indifference to a serious medical need and inhumane treatment violate the Eighth Amendment, he has provided an argument, let alone evidence, that demonstrate a likelihood of success on the Eighth Amendment claims that he has alleged in his third amended complaint.

**C. Likelihood of suffering irreparable harm**

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

Plaintiff argues that he has been subjected to inhumane and degrading treatment, has been forced to endure harassment and psychological torture, and as such is being denied safe living conditions. (Doc. # 59 at 7.) He also claims that he is being confined in isolation in administrative segregation, which he contends is life threatening. (*Id.*)

Plaintiff does not provide any specific information about the alleged inhumane treatment he is experiencing. Nor does he state why his confinement in administrative segregation is life threatening. Without more, Plaintiff's conclusory statements are not sufficient to establish a likelihood of irreparable harm. Some remote possibility of harm is not enough. *See Winter*, 555 U.S. at 22 (citation omitted) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

**D. Balance of hardships and Public Interest**

A party seeking injunctive relief "must establish...that the balance of equities tips in his

favor." *Winter*, 555 U.S. at 20. In addition, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff asserts that his suffering outweighs any hardship to Defendants. (Doc. # 59 at 8.) In addition, he claims that it is always in the public interest for prison officials to obey the law. (*Id*. at 9.) Again, the court finds that Plaintiff has provided no specific details regarding the harm he asserts he will suffer in the absence of injunctive relief. As such, the court cannot conclude that he has established the balance of hardships or public interest elements of a request for injunctive relief.

**E. Conclusion**

The prerequisites for injunctive relief not having been met, Plaintiff's request for injunctive relief should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's request for injunctive relief (Doc. # 59).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: April 22, 2013

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE